UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
97 NOV 12 PM 3:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

CONNIE DOLLAR, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-96-S-2609-NE
)
SHONEY'S, INC. )
)
    Defendant. )

ENTERED
NOV 13 1997

### MEMORANDUM OPINION

Connie Dollar was hired by defendant on August 2, 1993, to work as a food "server" at the "Shoney's" restaurant in Athens, Alabama. (Plaintiff's deposition at 30, 32.) A month later, Ms. Dollar was promoted to "dining room supervisor": a position which required that she perform the duties of a hostess, manage food servers, insure the cleanliness of the dining room, restrooms, and parking lot, and do all other things necessary to maintain customer satisfaction. (*Id.* at 36.) She held that position until October 24, 1994, when the event that triggered this action occurred. (*Id.* at 33.) Ms. Dollar alleges that defendant terminated her employment for exercising rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654. The action presently is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes the motion is due to be granted.

### I. BACKGROUND

On September 26, 1994, a physician diagnosed plaintiff's five year old daughter, DeAnn Dollar, as suffering from enlarged tonsils and adenoids. (*Id.* at 52-53.) The doctor prescribed antibiotics,

but forewarned that a tonsillectomy would be required if the condition did not improve within two weeks. (*Id.* at 53.)

Ms. Dollar advised defendant's area director, Ernest Patton, and restaurant manager, Lynn Bailey, of her daughter's condition and the possibility of surgery. (*Id.* at 54-57.) Both requested to be informed if plaintiff needed to miss work. (*Id.*)

The child's condition had not improved by October 14th and, consequently, a tonsillectomy was scheduled. (Quilligan deposition at 9-10.) Plaintiff missed work on the 14th, caring for her daughter. (Plaintiff's deposition at 59-60.) She telephoned Ernest Patton on that date to inform him of the reason for her absence from work, and to request seven to ten days of leave. Patton granted the request. (*Id.*)

The following day, however, restaurant manager Lynn Bailey asked plaintiff to work at least part of the day, because several other employees also were absent. (*Id.* at 60-61.) Ms. Dollar agreed to do so, and worked until relief manager Linda Townsend arrived. (*Id.* at 61-62.) Plaintiff later called Townsend from home, and asked her to remind Patton and Bailey that she would be absent from work until October 28, 1994, while her daughter recuperated from surgery. (*Id.* at 62-63.)[1] On October 24, 1994, Ms. Dollar drove to the restaurant to retrieve a paycheck. (*Id.* at 66-67.) She learned that restaurant manager Lynn Bailey had

---

[1] Plaintiff neither confirmed that Bailey or Patton received that message, nor had further contact with anyone at the restaurant until October 24, 1994. (Plaintiff's deposition at 61.)

2

been transferred during her absence, and she had been replaced as dining room supervisor. (*Id.* at 71-72.)

Plaintiff then met with defendant's area director, Ernest Patton, who informed her that both she and another dining room supervisor, Charlotte LeMay, were being replaced. (*Id.* at 67, 74-76, 80-81.) Patton allegedly told plaintiff, "you haven't done anything wrong," but added: "we need fresh blood." (Plaintiff's affidavit at 2.) Plaintiff declined Patton's offers to place her in the positions of server, salad bar attendant, or cashier — all of which were lower paying positions than dining room supervisor. (*Id.* at 76, 80; plaintiff's affidavit at 1.) Plaintiff "turned in her keys" the following day.[2]

## II. DISCUSSION

When, as here, a plaintiff's evidence is based upon circumstantial evidence of an employer's alleged discriminatory intent, a growing number of courts hold that the analytical framework for deciding FMLA cases should be the same as that employed in Title VII actions. *See, e.g., Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997); *Munizza v. State Farm Mutual Automobile Insurance Company*, No. 95-35794, 1996 WL 711563 at *3 (9th Cir. Dec. 5, 1996); *Peters v. Community Action Committee, Inc.*, No. 97-T-150, 1997 WL 595307 at *5 (M.D. Ala. Sept. 19, 1997); *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F. Supp. 1216, 1229 (S.D. Iowa 1997); *Dillon v. Carlton*, No. 96-434, 1997 WL

---

[2]Defendant disputes plaintiff's contention that she was terminated. That dispute is irrelevant for purposes of summary judgment, however, because plaintiff suffered an adverse employment action, either in the form of a demotion or termination.

3

580491 at *6 n.8 (M.D. Fla. 1997); *Dumoulin v. Formica*, 968 F. Supp. 68, 71 (N.D.N.Y. 1997); *Sidaris v. Runyon*, 967 F. Supp. 1260, 1271 (M.D. Ala. 1997); *Petsche v. Home Federal Savings Bank, Northern Ohio*, 952 F. Supp. 536, 537 (N.D. Ohio 1997); *Kaylor v. Fannin Regional Hospital, Inc.*, 946 F. Supp. 988, 999 (N.D. Ga. 1996).

This court joins that company. Accordingly, the familiar three-step framework developed by the Supreme Court for focusing the inquiry into an employer's allegedly discriminatory motives will be utilized. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff initially must establish a *prima facie* case, which requires proof that: (1) she availed herself of a right protected by the FMLA; (2) she thereafter suffered an adverse employment decision; and (3) there was a causal connection between the two events. *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997). If plaintiff establishes a *prima facie* case, thereby giving rise to a presumption of unlawful, disparate treatment, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption of intentional discrimination thus created by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have

4

an opportunity to show by a preponderance of the evidence that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

### A. Causal Connection

For purposes of summary judgment, defendant concedes the first two elements of a *prima facie* case and, instead, focuses upon the third. It asserts that the only evidence of a causal connection between plaintiff's FMLA leave and the decision to demote (or remove) her as dining room supervisor[3] is the temporal proximity of the two events, and then argues that courts deciding FMLA cases "will not infer discriminatory intent from timing alone." (Defendant's brief at 6-7 (quoting *Clay v. City of Chicago*, No. 96 C-3684, 1997 WL 182278 at *3 (N.D. Ill. April 9, 1997)).)

This court agrees that plaintiff offered no evidence of a causal nexus, other than the tight temporal proximity between relevant events. Even so, that is sufficient. When deciding retaliation cases under Title VII, the Eleventh Circuit has held that close temporal proximity gives rise to an inference of causal connectivity. *See, e.g., Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 601 (11th Cir. 1986)("The short period of time, however, between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by defendant that the plaintiff failed to prove causation"). Defendant refers to several

---

[3] As observed in note 2 *supra*, defendant denies that plaintiff was terminated. It asserts she was offered, but refused to accept, a demotion and, therefore, voluntarily resigned.

5

district court decisions from other jurisdictions,[4] but nevertheless fails to persuade this court that it should deviate from the analogous tendency of Eleventh Circuit precedent. Furthermore, at least one circuit has expressly found that a tight space between protected activity and a subsequent, adverse employment decision can satisfy the causation element of a FMLA *prima facie* case. *See Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997)("Morgan has established a *prima facie* case of FMLA retaliation, in that Hilti sent her a letter of discipline on the day she returned from leave").

Rather than finding that temporal proximity can never form the basis for an inference of a causal connection, therefore, this court instead aligns itself with those courts holding, in a distinguishable manner, that "timing ..., standing alone, is insufficient to raise an inference of pretext." *Dillon v. Carlton*, No. 96-434, 1997 WL 580491 at * 5 (M.D. Fla. Aug. 14, 1997)(emphasis supplied); *see also Keiss v. St. Francis Hospital of Evanston*, No. 96 C 4466, 1997 WL 417524 at *6 (N.D. Ill. July 22, 1997).

Here, Shoney's made an employment decision adverse to plaintiff while she was absent from work on FMLA leave. The court

---

[4]*Clay v. City of Chicago*, No. 96 C-3684, 1997 WL 18228 at *3 (N.D. Ill. April 9, 1997)("this court will not infer discriminatory intent from timing alone"); *McCown v. UOP, Inc.*, No. 94 C-2179, 1995 WL 519818 at *6 (N.D. Ill. Aug. 30, 1995)("If timing alone were sufficient, any employer who granted an employee leave under the FMLA would thereafter have its hands tied regarding any discipline of that employee"); *Garcia v. Fulbright & Jaworski, L.L.P.*, No. H-95-0053, 1996 WL 544371 at *7 (S.D. Tex. Aug. 15, 1996)("Discriminatory intent cannot be inferred merely from the time an employee is terminated after returning from the FMLA leave").

6

finds the temporal proximity between — indeed, the congruence of — those two events is sufficient to demonstrate a causal connection for the purpose of stating a *prima facie* FMLA case.

**B.   Defendant's Legitimate, Nondiscriminatory Reasons**

Defendant advanced two explanations for its decision to replace Connie Dollar as dining room supervisor. First, it alleged that supervisory changes were made to improve product quality and customer satisfaction. (Patton affidavit ¶ 5.) Prior to October 24, 1994, the Athens restaurant received "numerous customer complaints regarding service"; there also were problems related to "inadequate supplies in the store, sanitation problems, employee theft, and under-qualified management." (*Id.* ¶ 4.) Alternatively, defendant alleged that plaintiff's inadequate work performance warranted her demotion. (Defendant's brief at 8; Patton affidavit at ¶¶ 7,8.)

In support of its first (and primary) explanation for the contested employment action, defendant relied in part upon plaintiff's deposition testimony and an exhibit thereto, both of which affirm defendant's contention that the restaurant was mismanaged. (Plaintiff's deposition at 39-43, exhibit 7.) On September 11, 1994, Ernest Patton conducted a meeting with all employees, during which he requested that each person make lists of problems they perceived in the operation and management of the Athens restaurant. (*Id.* at 40-41.) Exhibit 7 to plaintiff's deposition is the list she submitted.

7

In the statement of facts submitted in opposition to summary judgment, plaintiff's counsel mischaracterizes exhibit 7 as Ms. Dollar's notes on "areas that [<u>Ernest</u>] <u>Patton</u> indicated needed improvement such as teamwork, staffing, completing work, self-discipline, and taking care of customers." (Plaintiff's brief at 2 (emphasis supplied).) That description is rebuffed by Connie Dollar's own deposition testimony, however, which clearly records that, with but two exceptions noted by Ms. Dollar, the list records her personal opinions of the restaurant's problems.

> Q. Okay. Now, are any of these comments [in exhibit 7] numbered one through fourteen, comments that [Ernest Patton] had made that you wrote down or were these strictly your opinions?
>
> A. No, this was my opinion.
>
> Q. Okay.
>
> A. He did say, no self discipline. He did say he was tired of the managers fighting against each other. I had no problem with anybody there that I worked with.

(Plaintiff's deposition at 42-43.) Plaintiff listed the following criticisms about the manner in which the restaurant was operated:

```
1.  Unorganized
2.  No Pride
3.  Not much team work
4.  Not strict enough
5.  Understaffed
6.  Lazy
7.  Employees not finishing their work before other shift
    comes in
8.  No self discipline
9.  Managers fighting against each other
10. Customers - who cares
11. Not enough food
12. Food cost
13. Not going by procedures
14. Don't care enough
```

8

(Plaintiff's deposition exhibit 7 (emphasis supplied to Ernest Patton's observations).)

In addition to plaintiff's opinions, defendant offers the affidavit of area director Ernest Patton, reading in part as follows:

> 4.  In October 1994, the Athens store was having significant problems. For example, there were numerous customer complaints regarding service, inadequate supplies in the store, sanitation problems, employee theft, and under-qualified management.
>
> 5.  In an attempt to make improvements at the Athens location, I decided to make several changes in personnel.
>
> 6.  These changes included replacing dining room supervisors, Charlotte LeMay and Connie Dollar. Both of these employees were replaced by Shoney's employees from other locations.
>
> 7.  I decided to demote Ms. Dollar to an hourly position because she did not have strong supervisory skills. Specifically, she did not properly discipline her subordinates for coming in late, not wearing proper uniforms, etc.
>
>     . . .
>
> 10. I recall that I informed Ms. Dollar of her demotion one day when she came into the store unexpectedly. She told me that she had heard a rumor that I was getting rid of the dining room supervisors. I told her that I was replacing the dining room supervisors because changes needed to be made in the store.

(Patton affidavit ¶¶ 4-7, 10.)[5]

Defendant carried its burden of demonstrating legitimate, nondiscriminatory reasons for its actions. Accordingly, plaintiff

---

[5] Patton makes no comment about the transfer of restaurant manager Lynn Bailey, but defendant relies upon plaintiff's testimony that Bailey was transferred at the same time she was demoted. (Plaintiff's deposition at 67-68.)

her demotion, confirm defendant's perception of supervisional deficiencies at the restaurant. Furthermore, plaintiff offers no explanation for the concomitant transfer of restaurant manager Lynn Bailey, or the simultaneous demotion of the other dining room supervisor, Charlotte LeMay: neither of whom had taken FMLA leave. Those actions eviscerate the probative force of Dollar's *prima facie* showing of causality. The conflict plaintiff perceives in Patton's statements concerning plaintiff's work performance and the timing of relevant events are not sufficient to cause a reasonable jury to conclude that defendant's principal reason for a change in supervisory staff is untrue.

### III. CONCLUSION

For the foregoing reasons, the court concludes that defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 12th day of November, 1997.

United States District Judge

11

must produce evidence demonstrating that those were not the "real reasons" for defendant's actions. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

Plaintiff's pretext arguments focus exclusively on defendant's second explanation for the contested action: *i.e.*, that Ms. Dollar's inadequate work performance warranted her demotion. According to plaintiff, Patton's initial statement to her, "you did nothing wrong,"[6] is inconsistent with his present testimony that she "was demoted because she did not have strong supervisory skills." (Patton affidavit ¶ 7.) Ms. Dollar also argues there is no documentary evidence of her alleged supervisory weaknesses (plaintiff's brief at 14-15), and testifies that her supervisory characteristics were never criticized by defendant. (Plaintiff's affidavit at 1.) Plaintiff's evidence <u>may</u> demonstrate pretext regarding Patton's claims about her allegedly inadequate work performance.

Even so, plaintiff has completely ignored defendant's principal contention: she presented nothing to rebut defendant's evidence that the Athens restaurant was in a sorry state of disorganization — providing poor service and food of inferior quality in a sloppy facility of questionable cleanliness — and that supervisory changes were made in an effort to remedy that situation.[7] Instead, plaintiff's own notes, made one month before

---

[6] Plaintiff's affidavit at 2.

[7] *Cf.* Brewer v. Purvis, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), *aff'd*, 44 F.3d 1008 (11th Cir. 1995)("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue"); Wiley v. Earl's Pawn & Jewelry, Inc., 950 F. Supp. 1108, 1113 n.4 (S.D. Ala. 1997); Southern Nevada Shell Dealers Association v. Shell Oil, 725 F. Supp. 1104, 1109 (D. Nev. 1989).

10